[Civ. No. 31172.   Second Dist., Div. Three.   May 3, 1968.]

NATHAN COHEN et al., Plaintiffs and Respondents, v. FRANCIS G. HEAVEY, Defendant and Appellant.

Axelrad, Sevilla & Ross and Alan D. Ross for Defendant and Appellant.

Martin M. Shapero for Plaintiffs and Respondents.

SHINN, J.*—Nathan Cohen and Rose Brooker obtained judgments of about $11,000 each against James A. Bower and Melba L. Bower (to be referred to in the singular). Unable to collect the judgments Cohen and Brooker sued Francis G. Heavey and others alleging that one day after they had obtained their judgments Bower conveyed to Nye, Inc., a corporation, the *alter ego* of Bower, certain real property and that Nye, Inc. conveyed the property to Heavey without consideration; ''the successive transfers were designed to deprive plaintiffs from satisfying their judgments''; Heavey executed a trust deed on the property to secure a loan of $150,000 by a loan association and gave Nye, Inc. a trust deed on the property for $75,000; at a later date, at execution sale, Cohen bought all interest of Bower in the property for $1,000. The prayer of the complaint was for judgment that the conveyances to Nye, Inc. and to Heavey were void, that the property is owned by Bower, subject to the rights of plaintiffs and the loan association, and that all sums received by Heavey be traced and subjected to the judgments of plaintiffs. It was not alleged that Bower or Nye, Inc. was insolvent or that Heavey was guilty of fraud.

Plaintiffs filed a supplemental complaint in which it was alleged the trust deed was about to be foreclosed, Heavey had paid no consideration for the property and ''merely permitted himself to be used to create a larger encumbrance on the property . . . [he] exercised dominion over the proceeds by paying off existing encumbrances not exceeding $100,000 and turning back to James A. Bower and Nye, Inc. in excess of $50,000. . . . That said acts were done, wrongfully and fraudulently with the specific purpose and intent of depriving the creditors of James A. Bower from realizing any monies from the property of James A. Bower and Nye, Inc., as previously described.'' The prayer sought additional relief: ''1.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

That Francis G. Heavey be held personally accountable for all funds transferred to James A. Bower and Nye, Inc. 2. That a personal judgment be granted against Francis G. Heavey in an amount sufficient to satisfy the judgment of the plaintiffs against James A. Bower.'' During the trial plaintiffs filed a amended supplemental complaint alleging the property had been sold under the trust deed and that at all times referred to Bower and Nye, Inc. were insolvent; the amount turned back to Bower and Nye, Inc. was in excess of $30,000, and the relief prayed for was the same as in the supplemental complaint. It was stipulated that the property had been sold under the trust deed.

Judgment against Heavey was given in favor of each plaintiff for $11,724.48. Heavey appeals.

▇ The basic ground of the appeal is that upon the findings and the undisputed facts Heavey incurred no liability to the plaintiffs; we are constrained to agree.

. The facts were not in dispute. Heavey was the only witness who testified to the transaction. The facts were the following: Bower owned three acres in the western section of Los Angeles where he lived in a spacious home. There was evidence that the property was worth $300,000 and the court so found; it was encumbered with a first trust deed of $80,000, a second trust deed with a balance of $40,000 and an attachment lien of $15,600. Bower and Heavey were land developers but were not partners, and in the transaction under review each acted as a free agent. Bower owned a corporation, Nye, Inc., and Heavey had a corporation, Dane Investments, in which Bower for a time had a half interest. The corporations were mere agencies of the owners. The $40,000 trust deed on Bower's property was in default and foreclosure was threatened. The property was considered good security for a loan in excess of the existing trust deed encumbrances and the lien of the attachment. It was believed that it would be easier to obtain a large loan if it was represented that Heavey was buying the property and was seeking a loan in connection with the purchase. Bower conveyed the property to Nye, Inc. It was arranged that the property would be transferred by Nye, Inc. to Heavey through an escrow under instructions showing he was purchasing the property for $300,000. An escrow was arranged; a loan of $150,000 was obtained from a loan company and the escrow instructions provided that the purchase price would be paid by Heavey with cash of $75,000, the proceeds of the loan and a second trust deed of $75,000, payable to Nye, Inc.; the existing encumbrances would be

paid in the amount of $120,000. Since it was necessary that the attachment be released it was provided that the net amount of available cash would be deposited with a title company, under an agreement with Bower, as indemnity against loss for issuing a policy free of the attachment lien; Heavey received $75,000 from Bower and deposited it in escrow, ostensibly as a down aayment, but it was returned out of the escrow to Bower, and Heavey paid nothing for the property. Title passed to Heavey, the existing encumbrances were paid and the balance remaining of $23,448.97 was deposited with the title company.

The sale was a sham. It was understood that Heavey was not buying the property, that the $75,000 trust deed to Nye, Inc. was not a genuine promise of Heavey, and that he would not be obligated to make any payments on it. Bower promised to make all payments on the $150,000 trust deed. It was understood that any sum borrowed on the property by Heavey would belong to Bower and that as soon as the escrow was closed Heavey would reconvey the property to Nye, Inc.; he reconveyed the property; $5,000 of the sum deposited with the title company was used to release the attachment and a check for the balance of $19,033.14 was issued to a Mr. and Mrs. Spingarn, who were said to be creditors of Bower.[1]

The escrow instructions were examined by the court and were marked for identification but through oversight were not received in evidence. However, Heavey, as the borrower, had to instruct the escrow holder how to disburse the funds, and since the money was in reality the property of Bower, it seems clear that the $19,033.14 was paid to Mr. and Mrs. Spingarn upon instructions of Bower and Nye, Inc.

The end result of the transaction was that the value of the Bowers' property was consumed in the trust deed indebtedness and in the payment of creditors of Bower, other than the plaintiffs.

The sole basis of the judgment is a finding that Heavey received a benefit in the sum of $23,448.97 "in that he controlled and directed the distribution of said amount." The undisputed evidence was that this sum was distributed by

---

[1] The attorney for Heavey stated that Mr. and Mrs. Spingarn were creditors of Bower and that Mr. Spingarn would so testify; he offered a stipulation to that effect, the stipulation was refused and the matter was allowed to rest. The important fact was that the money that remained afer the encumbrances had been paid was disbursed to or for the use and benefit of Bower.

Heavey in accordance with his duty, and for the benefit of Bower. The finding that Heavey benefited in the transaction was in error. The court did not find that Heavey was guilty of an intent to prevent plaintiffs from collecting their judgment or that he was guilty of any fraud in the transaction. Heavey testified that he did not know the plaintiffs or that they held judgments against Bower and that he believed Bower to be very solvent. There was no evidence that Heavey knew that Bower had creditors other than the ones he proposed to pay from the proceeds of the loan. There was no finding that he had knowledge of the plaintiffs' judgments. There was no evidence and no finding that Heavey used any of the money for himself. Upon the contrary, it was found that he conveyed the property to Nye, Inc. and disbursed the funds for the benefit of Bower.

We do not find in the record any support for the finding that Heavey benefited in the transaction. He had control of the funds as a trustee, he could and did disburse them in accordance with the instructions of Bower. After providing for payment of the existing encumbrances, including the attachment, he was bound to respect the agreement under which the title company refunded to Nye, Inc. or to its order, the balance of the indemnity fund.

Plaintiffs say their case is based upon section 3439.07 of the Civil Code which reads: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." They contend that in putting title to the property in the name of Nye, Inc. and then in the name of Heavey, Bower intended to hinder, delay and defraud them and that the transfers were fraudulent. We need not decide whether it was a fraud upon plaintiffs for Bower to conceal his ownership in order to avoid paying the plaintiffs' judgments so that he could borrow money on the property, to be kept for himself or used to pay other creditors. The finding that Bower was guilty of fraud does not make out a case for the plaintiffs or add anything to the other findings. Plaintiffs also say a deed made with intent of the grantor to defraud his creditors will be deemed fraudulent, even though the grantee is innocent of fraud, which, of course, is true. There can be no doubt that the innocent grantee must account for everything he received under a fraudulent conveyance. But irrespective of the intentions of Bower, the conveyance to Heavey without consideration imposed upon him the duty of accounting to

Bower for everything he received in the transaction. He had no right to use any of the funds for his own purpose or benefit or to keep them from Bower.

Plaintiffs have not cited a case in which a grantee or assignee of property received without consideration paid, and with no intent to defraud creditors, and who had returned to the grantor or assignor all the property received, was held personally liable to creditors for the value of the property which was returned. Imposition of personal liability in such circumstances would be unjust and unreasonable. Heavey would have been guilty of a wrong toward the plaintiffs only if he violated some duty he owed to them. But his duty was to Bower and not to Bower's creditors, whose existence was unknown to him.

In *Hickson* v. *Thielman,* 147 Cal.App.2d 11 [304 P.2d 122], cited by plaintiffs, personal judgment was rendered against a defendant for money she received with a fraudulent intent to defraud the creditors of the transferor. And in *Wright* v. *Salzberger,* 121 Cal.App. 639 [9 P.2d 860], the recipient of a transfer was held to personal liability for the proceeds of property she had sold when she had paid no consideration, the transferor was insolvent and the transfer was made and received with intent to delay and defraud creditors. The same is true of *Chichester* v. *Golden* (9th Cir. 1963) 321 F.2d 250, cited in oral argument. There was a specific finding there that the transferee had participated, with guilty knowledge, in a scheme to secrete assets in order to hinder and delay and ultimately to defraud creditors of the bankrupt transferor. None of these cases provides support for the contention of plaintiffs. The violation of duty in each case which was the basis of the personal judgment was the knowing and intentional participation in a scheme to defraud creditors.

The theory of the plaintiffs' case and the judgment is that Heavey benefited in the transaction at the expense of the plaintiffs, but plaintiffs do not say how he benefited. And the facts were that he did not benefit at all. The complaint accused Heavey of turning back the balance of the funds in order to prevent plaintiffs from collecting their judgments, but that theory failed when it was developed that Heavey had no knowledge that Bower had any creditors other than those he was planning to pay off with the money that was to be borrowed.

Through the escrow Heavey received $1,095.16. He testified he did not believe the money belonged to him and that he

immediately turned it over to Dane Investments. It was not alleged or found that Heavey benefited by the receipt of this sum. The money belonged to Bower and the reasonable inference was that Bower directed that it should go to Dane Investments to serve some purpose of his own.

Heavey testified that he had money invested in Dane Investments, that Bower was to see that about $14,000 would eventually be returned to him, and that he considered that the loan transaction would place him in a better position with Bower. The court found that he did not take title to the property as security for any debt owed to him by Bower or Nye. Heavey also testified he did not acknowledge his signature on the deed to Nye, Inc., and that he thought he would have to acknowledge it in order for it to be recorded, but that he considered the deed good as between himself and Bower and Nye, Inc. The deed was prepared in Bower's office; it bore the certificate of a notary who was Bower's secretary, and it was duly recorded. Whether the deed was acknowledged is immaterial. Heavey had no interest in the property and had a duty to reconvey it.

In the absence of a finding that Heavey acted with fraudulent intent or that he failed to account for the proceeds of the loan, and in the absence of evidence that he benefited from the transaction in any amount, the judgment cannot be permitted to stand.

The judgment is reversed.

Cobey, J., and Moss, J., concurred.