In re COLOMBIAN COFFEE CO., INC., Debtor.

Lawrence R. METSCH, as trustee for the estate of Colombian Coffee Co., Inc., Plaintiff,

v.

FIRST ALABAMA BANK OF MOBILE, N.A., f/k/a Merchants National Bank of Mobile, Defendant.

Bankruptcy No. 83–00904–BKC–TCB. Adv. No. 86–0086–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

March 28, 1986.

See also, Bkrtcy., 39 B.R. 7.

---

Lydia A. Fernandez, Hauser and Metsch, P.A., Miami, Fla., for plaintiff.

Richard T. Dorman, M. Margaret O'Brien, Johnstone, Adams, Howard, Bailey & Gordon, Mobile, Ala., Jose Astigarraga, Darrey A. Davis, Steel, Hector & Davis, Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

This chapter 11 trustee seeks $3,787,000 from a Mobile bank as a fraudulent transfer under 11 U.S.C. § 548(a) made to it as the "initial transferee" or an "immediate or mediate transferee" within the scope of § 550(a). It is conceded that the bank derived no benefit from the transfer and exhibited no bad faith. The bank has answered and the matter was tried on March 13. I conclude that the trustee is entitled to no relief from the bank.

There is no conflict in the testimony nor any dispute as to any operative event.

During the four weeks between February 3 and March 2, 1983, the amount in question moved in three separate transfers from Colombian Coffee's bank accounts in New York and Miami to the defendant bank for deposit in the account of General Coffee Corporation. The funds were disbursed almost immediately by General Coffee. Colombian, General and the individual who owned and controlled both corporations and caused the transfer of the funds from one to the other, all filed for bankruptcy within three months thereafter.

Under § 548(a), the trustee must prove and has proved the "transfer of an interest of the debtor" within a year before bankruptcy. He must also prove that the transfers were either made with "actual intent to hinder, delay, or defraud" under § 548(a)(1) or that they constituted constructive fraud under § 548(a)(2). He has alleged both.

I find no evidence in this record of actual intent on Colombian's part to hinder, delay or defraud any creditor. The trustee relies solely on this court's finding of actual intent on the part of another entity, General Coffee, with respect to a different transfer, in litigation involving neither of the present parties. That finding was based upon evidence not presented here. *Nordberg v. Republic National Bank of Miami (In re Chase & Sanborn Corp.)*, 51 B.R. 739, 740 (Bankr.S.D.Fla.1985). Although I would guess that plaintiff could have provided similar proof here, he did not do so. That finding is res inter alios as to this case.

The trustee has, however, proved the elements of constructive fraud under § 548(a)(2) with respect to this transfer. Colombian was insolvent on the dates of the transfers and it "received less than a reasonably equivalent value in exchange for such transfer." Defendant disputes both findings, but because I am convinced defendant must prevail on other grounds, I will not discuss defendant's arguments or the evidence.

The trustee makes no effort to recover from General Coffee, the beneficiary of the transfers because General is also in bankruptcy and is insolvent. Instead, the trustee pursues the defendant bank under § 550(a), which provides that:

"... to the extent that a transfer is avoided ... the trustee may recover ... the property transferred, or, if the court so orders, the value of such property, from (1) the *initial transferee* of such transfer or the entity for whose benefit such transfer was made; or (2) *any immediate or mediate transferee* of such initial transferee." (Emphasis supplied).

As stated in *Gropper v. Unitrac, et al. (In re Fabric Buys of Jericho, Inc.,* 33 B.R. 334, 336–37 (Bankr.S.D.N.Y.1983):

"By passing section 550, Congress hoped to preclude multiple transfers or convoluted business transactions from frus-

trating the recovery of avoidable transfers. Such recovery problems existed under the former Bankruptcy Act of 1898. See 4 *Collier on Bankruptcy* ¶ 67.41[8] (14th ed. 1982) (e.g., problems re transfers among family owned operations or corporations with single shareholders)."

That purpose would not be served here. Instead, the trustee would obtain a windfall from an innocent bystander.

I agree with the bank that it was neither the "initial transferee" nor "any immediate or mediate transferee" for the purposes of § 550(a). It no longer holds the debtor's property. It merely served as a commercial conduit employed by the transferor in moving its property to another corporation. Its role in this transfer was indistinguishable from that of a messenger, the postal service, a common carrier, a warehouse, or a broker. It derived no benefit from the transfer, other than its customary fee for its banking services. It was granted no discretion with respect to the disposition of the property entrusted to it. It could not have refused to follow the debtor's instructions.

There is no hint in the legislative history that § 550(a) was intended to make an innocent link in the commercial chain bear the loss of a fraudulent or preferential transfer that has vanished beyond the trustee's reach. Nor is there any rational reason why it should do so.

No court of appeals has yet passed upon § 550. However, in *Fabric Buys of Jericho, supra,* the avoidable preferential transfer was made by the debtor to settle a disputed account with a third party. The payment was made in escrow to the transferee's attorneys. The attorneys disbursed the funds to their client. The court held that the attorneys were not transferees within the meaning of § 550(a):

"Such considerations are not applicable to this case. The Hopgood firm acted as a mere conduit of funds from Fabric Buys to Unitrac. As one commentator states, an initial transferee is one who deals directly with the debtor. 4 *Collier*

*on Bankruptcy* ¶ 550.01, at 550–3 (15th ed. 1983). Here Unitrac had the direct business dealings with Fabric Buys that gave rise to the debt, subsequent suit, and the allegedly preferential payment. That such amount was funneled through the escrow account does not make Unitrac's lawyer an initial transferee." *Id.* at 337.

The role of the bank here was indistinguishable from that of the attorney in *Fabric Buys.*

*Fabric Buys* held alternatively that even if the attorneys were transferees for the purposes of § 550(a), the court should:

"exercise its equitable discretion and prevent the Trustee from recovering a preference from the Hopgood firm." *Id.*

In doing so, it relied upon *Collier* 15th ed. ¶ 550.02 at page 550–57.

In our case, the absurdity of an overly literal application of § 550(a) is even more apparent than it was in *Fabric Buys.* The funds in this case moved from the debtor's bank, a member of the federal reserve system, by wire transfer to the defendant bank, also a member of the federal reserve system. Members are required to treat such transfers as cash and honor them immediately. They have no discretion to delay, divert or block a wire transfer.

Wire transfers are voluminous. The defendant bank receives over 100 a day. Larger banks receive thousands. They involve billions of dollars. They constitute an integral part of today's worldwide banking system.

The wire transfer notice frequently does not identify the originating party. The first and largest of the three transfers in this case did not. They are frequently automated and never seen by a human eye. If a bank must at its peril examine the source of the wired funds, determine its solvency and verify the consideration it received before the bank honors the transfer, the wire transfer system would utterly collapse.

The trustee argues that the specific statutory exceptions provided in § 548(d)(2)(B) and (C), which exempt a broker or a repo participant who receive margin payments from the fraudulent transfer provisions of § 548(a), indicate a legislative intent to permit no other exception. The trustee argues that the banking industry should seek a similar exception. I disagree. These provisions have no application to § 550(a), which is the only predicate for this defendant's liability. Congress could not rationally have intended that § 550(a) apply in this instance.

The trustee relies upon *Mixon v. Mid-Continent Systems, Inc. (In re Big Three Transportation, Inc.)*, 41 B.R. 16, 20 (Bankr.W.D.Ark.1983). To the extent *Big Three* departs from *Fabric Buys*, which it does not discuss, and several similar bankruptcy decisions, which it rejects, I decline to follow *Big Three*.

The trustee also takes comfort from this court's prior decision in *Nordberg v. Republic National Bank of Miami (In re Chase & Sanborn Corp.) supra*. His reliance on that case is misplaced. In *Chase & Sanborn*, the bank's liability was not predicated upon § 550(a), and that statute, which is controlling here, is not mentioned at all. The defendant bank there was not a mere commercial conduit. It was a beneficiary of the transfer which this court held avoidable under § 548(a):

> "The transfer was a check drawn on another bank, payable to the defendant bank, and honored on February 18, 1983. The amount equaled and was applied to satisfy a personal note owed by Alberto Duque to the defendant bank.... The bank dealt solely with Duque. The debtor did not even have an account with the defendant." *Id.* at 739.

Neither the holding nor the statements made in that decision are applicable here.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice. Costs may be taxed on motion.