**In re MACHINERY AND STEEL SERVICE, INC., Debtor.**

**MACHINERY AND STEEL SERVICE, INC., Plaintiff,**

**v.**

**James DALTON, Anthony Graziano, et al., as Representatives of Massachusetts Millwrights Union Local 1121, Defendants.**

**Bankruptcy No. 87–11703–CJK.**
**Adv. No. 89–1358–CJK.**

United States Bankruptcy Court, D. Massachusetts.

March 23, 1990.

Matthew A. Feldman, Lane & Altman, Boston, Mass., for plaintiff.

Christopher Litterio, Shapiro, Isreal & Weiner, Boston, Mass., for defendant.

MEMORANDUM OF DECISION ON DE-FENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MO-TION FOR LEAVE TO AMEND COMPLAINT TO ADD ADDITIONAL DEFENDANTS

CAROL J. KENNER, Bankruptcy Judge.

By this adversary proceeding, the plaintiff, Machinery and Steel Service, Inc. (the "Debtor"), seeks to avoid and recover two payments, one which the Debtor contends is a preferential transfer under 11 U.S.C. § 547(b) and another which the Debtor contends is subject to return under 11 U.S.C. § 549. Before the Court are the motion of the defendant Massachusetts Millwrights Union Local 1121 (the "Union") for summary judgment and the motion of the Debtor for leave to amend complaint to add additional defendants. The central issue is whether the Union is a proper defendant here.

There are no genuine issues of material fact. During 1986 and 1987, the Debtor employed millwrights supplied by the Union in conjunction with a subcontract it was performing for Service Erection and Machine Co. ("SEAMCO"). As an employer of Union millwrights, the Debtor was required to contribute money, based on an hourly rate per employee, to the Massachusetts Millwrights Apprenticeship and Training Fund, the Boston and Eastern Massachusetts Health and Welfare Fund, and the Massachusetts State Carpenters' Pension Fund (the "Funds"). The Debtor became delinquent in its payments to the Funds and thereby jeopardized the future availability of Union employees for the SEAMCO contract. Therefore, on October 6, 1987, SEAMCO issued three checks (one for each Fund) totalling $85,248.54 payable jointly to the Debtor and the respective Funds, but not payable to the Union. The Debtor duly endorsed the checks over to the Funds. Then on November 3, 1987, the Debtor filed its petition under Chapter 11. After the Chapter 11 filing, SEAMCO issued a fourth check for $17,041.85, payable jointly to the Debtor and the Funds; after the Debtor endorsed this check, it was deposited into the Funds' accounts.

The Union received no benefit from the payments to the Funds. Rather, the Funds inured to the benefit of individual Union members; each individual member benefits from the Funds in proportion to the number of hours he or she works in a given year. Not all members of the Union worked on the SEAMCO subcontract.

In support of its motion for summary judgment, the Union argues that because it received neither the payments themselves nor any benefit from them, the Debtor cannot recover the payments from the Union. The Debtor answers that the Union, as the party to whom the Debtor physically delivered the endorsed check, is the "initial transferee" of the payments within the meaning of 11 U.S.C. § 550(a)(1) and as such can be sued for recovery of the payments.[1]

I have no evidence from either party as to whether the Debtor sent the endorsed checks directly to the Funds or, instead, sent them to the Union, which in turn gave them to the Funds. In their respective memoranda, the Debtor alleges that it sent the checks to the Union, but the Union alleges that the Debtor transferred the checks directly to the Funds. The Debtor, as plaintiff, bears the burden of submitting evidence sufficient to establish the existence of this essential element of its case, and its failure to do so in itself warrants allowing the motion for summary judgment.[2] But in the absence of evidence, and

---

1. The Debtor does not argue that the Union and the Funds are not separate entities such that the payments to the Funds should be deemed payments to the Union. Nor does it argue that the Union was the ultimate beneficiary of the payments.

2. "Rule 56(c) [of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7056] mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

because the Court concludes that it will not affect the outcome, the Court will assume for purposes of this motion that the Debtor sent the checks to the Union and that the Union transferred them to the Funds.

■ Accordingly, the Court must decide whether the Union, by receiving a check it could not negotiate, became an "initial transferee" within the meaning of § 550(a)(1), which states as follows:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 [or] 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

11 U.S.C. § 550(a)(1). A "transferee," as § 550(a) uses the term, is a party who received *property* or *value* ("the trustee may recover ... the property transferred, or ... the value of such property," 11 U.S.C. § 550(a)). That observation is sufficient to resolve the present issue because the Union received only a check it could not negotiate. The checks were not payable to the Union; they were payable jointly to the Debtor and the Funds and had to be endorsed by both before they could be honored. When the Union received the checks, only the Debtor had endorsed them; the Union could not cash, deposit, or otherwise negotiate them. Therefore, the checks gave the Union no control over the monies they represented, and the transfer of the checks to the Union was not a transfer of value or of property. The Union therefore was not a transferee within the meaning of § 550(a).

The courts that have defined "initial transferee" have used similar reasoning. The Fourth Circuit Court of Appeals, rejecting a literal interpretation of § 550(a), held that the initial recipient of a payment may not always be an "initial transferee". *In re Harbour*, 845 F.2d 1254, 1256–1258 (4th Cir.1988). It held that where the transferee acts, without bad faith, as a "mere conduit of funds"—such as where a

bank receives funds for deposit in a customer's account, or an attorney receives funds on her client's behalf—the conduit should not be deemed an initial transferee. The Eleventh Circuit Court of Appeals determined whether transferees were "initial transferees" by asking whether they "actually controlled the funds or merely served as conduits, holding money that was in fact controlled by either the transferor or the real transferee." *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir.1988). And the Seventh Circuit stated: "we think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Financial Services v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988).

Under none of these tests would the Union qualify as a transferee. The Union acted only as a conduit of the checks; and I have no allegation or evidence that in doing so, it acted in bad faith. More importantly, the Union had no right of legal control or of dominion over the monies represented by the checks. Without the Funds' endorsements, the checks themselves could not be negotiated or honored, and so the Union had neither the right nor the ability to put the checks to its own use.

The Court therefore concludes that the Union was not an initial transferee within the meaning of 11 U.S.C. § 550(a)(1), that judgment should enter for the Union as a matter of law, and that the Union's motion for summary judgment should be allowed. A separate judgment will enter accordingly. Also, the Debtor's motion for leave to add additional defendants is denied. If the Debtor wants to proceed against the Funds, it can commence a new adversary proceeding for that purpose.