[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On January 19, 1995, the plaintiff, Gellatly Petroleum 
Towing, Inc. (Gellatly), filed a four-count complaint against the defendants Atlantic Technologies, Ltd. (Atlantic), Maria Razza (Razza), and William F. and Ivy L. Booth (Booths). In count one of the complaint, the plaintiff alleged that defendant Atlantic breached its warranties of good title to a vessel sold by the defendant to the plaintiff. In count two, the plaintiff alleged that defendant Atlantic made a fraudulent conveyance of real CT Page 11420 property located in Greenwich, Connecticut, to defendant Razza in violation of the Connecticut Uniform Fraudulent Transfer Act (CUFTA) C.G.S. § 52-552a. In count three, the plaintiff alleged that defendant Razza knowingly conspired with defendant Atlantic in the fraudulent transfer of this real property. In count four, the plaintiff alleged that defendant Razza made a fraudulent conveyance of this same real property to defendant Booths in violation of C.G.S. § 52-552a.
On January 19, 1995, the plaintiff Gellatly filed an Application for Ex Parte Prejudgment Remedy which asked for,inter alia, a temporary restraining order enjoining defendant Razza from further disposing the proceeds she received from the transfer of the real property, pursuant to C.G.S. § 52-278aet seq. and § 52-552h(a)(3)(A). In support of its application, Gellatly filed exhibits and an affidavit. On that date, the court granted the TRO and ordered a prejudgment remedy hearing which took place on May 31, and June 1, 1995.
At the hearing, Gellatly filed a Motion to Modify which asked for a preliminary injunction/TRO enjoining defendant Razza from transferring real property located at Rye Brook, New York, of which she is possessed, or any of her assets, including but not limited to, any proceeds she received from the fraudulent transfer of real property alleged in the complaint, sufficient to secure the amount of $175,000.00. The motion also asked that the TROs in effect against defendant Atlantic continue but be expanded to $175,000.00, and that defendant Razza disclose to the plaintiff assets and property sufficient to satisfy the prejudgment remedy, pursuant to C.G.S. § 52-278n. Gellatly's motion to modify its application was granted.
The principal legal issue in this application for prejudgment remedy concerns the statutory liability of defendant Razza under C.G.S. § 42-552i(b). That section, part of the defenses, liability and protection of transferees under CUFTA, reads in relevant part:
 [T]he creditor may recover judgment for the value of the asset [fraudulently] transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made, or (2) CT Page 11421 any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee. (Emphasis added).
Gellatly relies on the plain meaning of this language for the proposition that as a first transferee, Razza is personally liable up to the amount of Gellatly's claim even if she was an "innocent dupe" (i.e., not a party to the fraud). Gellatly has filed a brief in support of this position.
In opposition, Razza contends that the supplemental provisions of the CUFTA prohibit any such judgment against her. Specifically, Razza points to C.G.S. § 52-552k, which supplements the CUFTA provisions with the principles of law and equity, including "the law merchant and the law relating to principle and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency or other validating or invalidating cause." Razza also points to the decision in Cohenv. Heavey, 68 Cal.Rptr. 180, 161 Cal.App.2d 766 (1968), which, although pre-UFTA, stands for the proposition that innocent transferees of fraudulently transferred property are not personally liable to the creditor. (See attached copy of decision.*) Razza has filed a brief in support of her position.
The court after having conducted the hearing finds the following facts to be true. On or about September 1, 1993, the defendant Maria Razza (hereinafter called Razza), loaned $57,000.00 approximately to a friend one Douglas C. Anderson so that Mr. Anderson could pay-off a second mortgage that was coming due. In consideration thereof, Mr. Anderson acting as president on behalf of defendant Atlantic Technologies, Ltd., gave Razza a mortgage on the property for $57,123.89. In November 1994, Mr. Anderson suggested that she was entitled to additional security. Although there was discussion about transferring the property to her, she declined the suggestion. In fact, it is clear to this court that she had no knowledge of what exactly a quit claim deed was and the tax consequences of such an action. Unknown to her, Mr. Anderson executed and recorded a quit claim deed on November 15, 1994 transferring the property to her. Several days later Mr. Anderson informed her of the transfer and she objected.
She did not believe the property was her own and was only concerned with the repayment of her mortgage. Within a short period of time the property was sold by Mr. Anderson to bona fide purchasers for value. She testified that her total knowledge and CT Page 11422 involvement in the closing for the sale of the property was to go to a bank on November 29, 1994 in Greenwich with Mr. Anderson and sign documents that he provided to her and appear at the actual closing on the same date for a very short period of time and sign additional documents. At Mr. Anderson's direction, Razza wired $140,000.00 approximately to a payee in the West Indies. She kept $51,000.00 towards the repayment of her mortgage. She was then told to keep $9,000.00 out of the second check to complete the repayment of her mortgage, and to return to him the balance. It is clear to this court that Razza kept none of the proceeds from the sale of the property in excess of her mortgage balance. She returned all other funds to Atlantic Technologies, Ltd. or its designee at the direction of Mr. Anderson. The defendant Razza received no personal benefit from the ownership of the property. It is clear to this court that she was not aware of the financial or legal circumstances of Atlantic Technologies, Ltd. or Mr. Anderson. The court finds that she did not know of the plaintiff until she received notice of this action. It is clear to this court that the defendant was used by Mr. Anderson and that she is an innocent grantee/transferee under all the circumstances.
There are no Connecticut decisions that construe § 52-552i or address transferee liability under the UFTA. An examination of the relevant legislative history, however, provides some clues. Before 1991, fraudulent conveyances in Connecticut were regulated by C.G.S. § 52-552, which was based on Article VI of the Uniform Commercial Code. In order to improve the statutory protection of creditors, the Legislature repealed § 52-552 in 1991 and replaced it with the current C.G.S. § 52-552a-1, inclusive, which is based on the Uniform Fraudulent Transfer Act (1984).
Statutory provision at issue today, § 52-552i(b), is a near-exact copy of § 8(b) of the Uniform Act. As in Connecticut, there are very few cases from foreign jurisdictions construing the UFTA. One decision that does address the subject of transferee liability, however, is Park Hill Corp v. Sharp,60 Wash. App. 283, 803 P.2d 326 (1991). Although the fraudulent transfer claim in that case arose out of a complex set of facts different from those in the instant controversy, the Court of Appeals affirmed the dismissal of the creditor's cause of action. (See attached copy of decision, defendant's brief). The UFTA, the court held, would be construed to permit a money judgment to be awarded against a transferee only if the transferee knowingly accepted property with the intent to assist the debtor in evading CT Page 11423 the creditor and place the property beyond the creditor's reach.
Although little else in the way of case law exists on the subject of transferee liability under the UFTA, some clues can be found in the cases construing the U.S. Bankruptcy Code, for § 8(b) of the Uniform Act is derived from the fraudulent transfer provisions of 11 U.S.C. § 550(a). That section reads in relevant part: "[T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."
A survey of the bankruptcy cases indicates that an exception to "initial transferee" liability under § 550(a) exists when the transferee is merely a "straw" or "conduit" for the debtor's fraudulent transfer. See Bonded Financial Services, Inc. v.European American Bank, 838 F.2d 890 (7th Cir. 1988) (holding that a bank that received a check from a debtor with instructions to deposit the money in the account of the debtor's principal and later was instructed to apply the money to reduce the principal's loan balance was merely a financial intermediary and not liable for the transfer); In re Chase Sanborn Corp. , 848 F.2d 1196
(11th Cir. 1988) (holding that a bank conducting a wire transfer was merely a conduit and not the initial transferee); In reHabour, 845 F.2d 1254 (4th Cir. 1988) (holding that a third party who is merely a conduit for whom a fraudulent transfer is made by the debtor may not be an "initial transferee unless the party acted in bad faith").
The case law construing transferee liability under the UFTA is scarce, but the foreseeing authorities together stand for the proposition that an "innocent dupe" transferee is not personally liable up to the amount of the creditor's claim.
Accordingly, the Motion to Modify PJR #110 dated May 31, 1995 is denied, and all previous PJR remedies granted are vacated.