**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: SOUTHEAST HOTEL PROPERTIES
LIMITED PARTNERSHIP, d/b/a Days
Inn, d/b/a Howard Johnson; FLORIDA
HOTEL PROPERTIES LIMITED
PARTNERSHIP PLAN TRUST
AGREEMENT,
<u>Debtors.</u>

No. 95-3188

EDWARD P. BOWERS, Trustee,
<u>Plaintiff-Appellee,</u>

v.

ATLANTA MOTOR SPEEDWAY,
INCORPORATED,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-94-7-3-MU, CA-94-8-3-MU, BK-91-31425, BK-91-31727)

Argued: September 27, 1996

Decided: October 31, 1996

Before ERVIN and HAMILTON, Circuit Judges, and SPENCER,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
which Judge Ervin and Judge Spencer joined.

**COUNSEL**

**ARGUED:** Robert Curtis Muth, JAMES, MCELROY & DIEHL, P.A., Charlotte, North Carolina, for Appellant. Joseph Williamson Grier, III, GRIER & GRIER, P.A., Charlotte, North Carolina, for Appellee.

_____

**OPINION**

HAMILTON, Circuit Judge:

Atlanta Motor Speedway (AMS) appeals the district court's affirmance of the bankruptcy court's entry of summary judgment in favor of the trustee for the bankruptcy debtors (Trustee), Florida Hotel Properties Limited Partnership (FHP) and Southeast Hotel Properties Limited Partnership (SEHP), in a consolidated adversary proceeding pursuant to § 549 of the Bankruptcy Code. See 11 U.S.C. § 549. For the reasons stated herein, we affirm.

I.

FHP and SEHP owned collectively twenty-five Days Inn Hotels in Florida and other Southeastern states. Commercial Management Corporation (CMC) managed both FHP and SEHP, and as their manager, controlled their operating bank accounts. Sam McMahon, III (McMahon) was president of CMC at all times relevant to this case.

On July 2, 1991, FHP filed a voluntary petition under Chapter 11 of the Bankruptcy Code and operated as a debtor-in-possession[1] until

_____

[1] Until a trustee is appointed and qualified under 11 U.S.C. § 322, "debtor-in-possession" means "debtor" for purposes of Chapter 11. 11 U.S.C. § 1101(1); see also 11 U.S.C.§ 322 (concerning qualification of trustee in bankruptcy); 11 U.S.C. § 1104 (providing for appointment of trustee under Chapter 11 of Bankruptcy Code). 11 U.S.C. § 1107, however, grants a "debtor-in-possession" the right to exercise all powers and the responsibility to perform all of the duties of a trustee within certain limitations. 11 U.S.C. § 1107. Therefore, for purposes of Chapter 11

2

a special examiner was appointed on December 13, 1991. On August 15, 1991, an involuntary bankruptcy petition was filed against SEHP, and on September 12, 1991, an order for relief was entered against SEHP. SEHP also operated as a debtor-in-possession until a special examiner was appointed on November 18, 1991.

In early October 1991, AMS provided a hospitality suite and guest services to Team III Racing, a corporation owned by McMahon, for which it subsequently issued an invoice to Team III Racing. On November 15, 1991, CMC issued two checks in an effort to satisfy the invoice: one from the FHP operating account for $12,500, and one from the SEHP operating account for $10,000. Rather than issuing the checks directly to AMS, CMC issued them to Southern National Bank (SNB) with the instruction that SNB issue a cashier's check to AMS in the amount of $22,500. Shortly thereafter, per CMC's instructions, SNB issued and delivered one cashier's check to AMS in the amount of $22,500, which noted "Florida Hotel Properties" as remitter. McMahon then caused an employee of CMC to create certain false documents to reflect the disbursement of $22,500 as refunds of guests' deposits for group tours booked with FHP and SEHP.

Because the transfers were effected post-petition, the Trustee for FHP and SEHP[2] subsequently brought two adversary proceedings against AMS under §§ 549 and 550 of the Bankruptcy Code to avoid the transfers and recover the $22,500. See 11 U.S.C. § 549 (giving trustee authority to avoid unauthorized post-petition transfers of prop-

_____

bankruptcies, a "debtor-in-possession" is a debtor who remains in possession of the pre-petition assets and administers them for the benefit of the creditor body pursuant to 11 U.S.C. § 1107. In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 576 (Bankr. N.D. Tex. 1986); see also Kremen v. Harford Mut. Ins. Co., 958 F.2d 602, 605 (4th Cir. 1992) (debtor-in-possession acts in the interests of creditors, not in his own interests). "A debtor-in-possession is a fiduciary and owes the same duties as a trustee." Id.

[2] The Trustee, Edward P. Bowers, is the trustee for the SEHP Limited Partnership Claims Liquidating Trust and for the FHP Limited Partnership Plan Trust Agreement. The record does not disclose when he was appointed.

erty out of estate); id. § 550 (authorizing trustee to recover property transferred to extent transfer is avoided under§ 549). After the bankruptcy court consolidated the two proceedings and discovery took place, both parties moved for summary judgment. Following a hearing, the bankruptcy court found that FHP and SEHP had made transfers after the commencement of the FHP bankruptcy proceeding and after the entry of the order for relief in the SEHP bankruptcy proceeding. The bankruptcy court found further that the transfer was not in the ordinary course of the business of either FHP or SEHP and was not authorized under the Bankruptcy Code.**3** The bankruptcy court concluded that the transfers were avoidable and that AMS was liable as the initial transferee of the transfers under§ 550(a) of the Bankruptcy Code.**4**

AMS appealed the bankruptcy court's decision to the United States District Court for the Western District of North Carolina. The district court affirmed the decision of the bankruptcy court granting the Trustee's motion for summary judgment. Specifically, the district court

_____

**3** In order for a post-petition transfer to be avoided under § 549 of the Bankruptcy Code, the transfer must not have been authorized. 11 U.S.C. § 1108 gives the trustee the authority to operate the debtor's business, and as stated above, § 1107 gives the debtor-in-possession all of the powers given to a trustee under Chapter 11. See 11 U.S.C. §§ 1107, 1108. In addition, 11 U.S.C. § 363(c)(1) gives a trustee who is authorized to operate a debtor's business under § 1108 the authority to enter into transactions in the ordinary course of business without notice or hearing and to use the property of the estate in the ordinary course of business without notice or hearing. 11 U.S.C. § 363(c)(1). Thus, a post-petition transfer effected by a debtor-in-possession that occurs in the ordinary course of the debtor's business is authorized under§§ 1107 and 1108 and may not be avoided under § 549. See In re Roth Am., Inc., 975 F.2d 949, 952 (10th Cir. 1992) (discussing § 363(c)(1) and noting that in the event a transaction is undertaken without notice and hearing and is not in ordinary course of business, it may be avoided under§ 549). The bankruptcy court's finding in this case that the transfer to AMS did not occur in the ordinary course of either debtor's business was, therefore, necessary to the judgment in favor of the Trustee.

**4** As discussed infra,§ 550(a) permits a trustee to recover property avoided under § 549 from, among others, the"initial transferee" of the transfer. See 11 U.S.C. § 550(a).

held that AMS was the "initial transferee" of the debtors' property under Section 550(a) of the Bankruptcy Code and, therefore, the Trustee could recover the $22,500. In addition, the district court held that there were no genuine issues of material fact as to whether the transfer was in the ordinary course of the debtors' businesses, making summary judgment appropriate. AMS noted a timely appeal.

II.

Because the district court sits as an appellate court in bankruptcy, our review of the district court's decision is plenary. See Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988). In other words, we apply the same standard of review as the district court applied to the bankruptcy court's decision. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).

III.

AMS's first contention on appeal is that the district court and bankruptcy court erred in holding that AMS was the "initial transferee" of the avoidable transfers under § 550 of the Bankruptcy Code. Instead, AMS argues that either CMC or McMahon was the initial transferee in this case.

A.

As noted above, a trustee in bankruptcy is entitled to avoid unauthorized post-petition transfers. See 11 U.S.C. § 549. 11 U.S.C. § 550 sets forth the transferees from whom a trustee may recover property where a transfer has been avoided under § 549 of the Bankruptcy Code. See 11 U.S.C. § 550. Specifically, § 550 provides that to the extent that a transfer is avoided under § 549 of the Code, the trustee may recover the property from:

>      (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

>      (2) any immediate or mediate transferee of such initial transferee.

5

42 U.S.C. § 550(a). Section 550 further provides that the trustee may not recover under § 550(a)(2) from:

> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

> (2) any immediate or mediate good faith transferee of such transferee.

42 U.S.C. § 550(b). Thus, § 550 protects a mediate or immediate transferee who has taken for value in good faith without knowledge of the voidability of the transfer. First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.), 974 F.2d 712, 722 (6th Cir. 1992). However, neither the "initial transferee" nor "the entity for whose benefit such transfer was made" receives this protection. Id. Rather, the trustee's power to recover from these entities under § 550(a)(1) is absolute. Danning v. Miller , 922 F.2d 544, 547 (9th Cir. 1991).

Therefore, under § 550(a), if AMS constitutes the initial transferee of the November 15, 1991 transfers, the Trustee is entitled to recover the $22,500 from AMS. The term "initial transferee" is not defined in the Bankruptcy Code. See Malloy v. Citizens Bank of Sapulpa (In re First Sec. Mortgage Co.), 33 F.3d 42, 43 (10th Cir. 1994). However, in Bonded Fin. Serv., Inc. v. European Am. Bank , 838 F.2d 890 (7th Cir. 1988), the Seventh Circuit set forth the definition of "initial transferee" employed by every circuit that has subsequently considered the question. See, e.g., Malloy, 33 F.3d at 44; Security First Nat'l Bank v. Brunson (In re Coutee), 984 F.2d 138, 140-41 (5th Cir. 1993); Rafoth, 974 F.2d at 722; Danning, 922 F.2d at 549.

In Bonded, the Seventh Circuit articulated a"dominion and control" test for determining whether an entity is an "initial transferee" under § 550. According to the Bonded court, "the minimum requirement of status as a `transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." Bonded, 838 F.2d at 893. The court stated further that "`transferee' is not a self-defining term; it must mean something different from`possessor' or

6

`holder' or `agent.'" Id. at 894. Finally, the Bonded court held that the terms "initial transferee" and "entity for whose benefit [the] transfer was made" as used in § 550 are mutually exclusive, precluding an entity from constituting both the transferee and the entity for whose benefit such transfer was made. Id. at 895-96.

Although our circuit has not explicitly adopted the test set forth in Bonded, we have recognized principles consistent with the dominion and control test. For example, we have recognized that the initial transferee of property is not always the initial recipient of the property, Huffman v. Commerce Security Corp. (In re Harbour), 845 F.2d 1254, 1257 (4th Cir. 1988), and that a party cannot be an initial transferee if he is a "mere conduit" for the party who had a direct business relationship with the debtor, Lowry v. Security Pac. Business Credit, Inc. (In re Columbia Data Products), 892 F.2d 26, 28 (4th Cir. 1989). In addition, we relied on Bonded when we held that the entity "for whose benefit [the] transfer was made," see 11 U.S.C. § 550(a)(1), cannot be a subsequent transferee of the property, but rather is "`a guarantor or debtor--someone who receives the benefit but not the money.'" Lowry, 892 F.2d at 29 (quoting Bonded, 838 F.2d at 895).

While courts have consistently held that the Bonded dominion and control test is the appropriate test to apply when determining whether a person or entity constitutes an initial transferee under § 550, those same courts have disagreed about the type of dominion and control that must be asserted. For example, some courts have held that a principal or agent acting in his or her representative capacity is an initial transferee where that person exercised physical control over the funds. See, e.g., Robinson v. Home Sav. of Am. (In re Concord Senior Hous. Found.), 94 B.R. 180, 181-82 (Bankr. C.D. Cal. 1988) (principal is initial transferee where principal pledged funds transferred to certificate of deposit as security for personal loans); Ross v. United States (In re Auto-Pak, Inc.), 73 B.R. 52, 54 (D.D.C. 1987) (principal is initial transferee where principal converted check written to defendant into cashier's check also payable to defendant but adding explanation that funds were for third party's account); Still v. American Nat'l Bank & Trust Co. of Chattanooga (In re Jorges Carpet Mills, Inc.), 50 B.R. 84, 85 (Bankr. E.D. Tenn. 1985) (principal is initial transferee where principal obtained cashier's check with debtor's funds and applied funds to personal debt). Most courts, however, have

7

held that an agent or principal does not constitute the initial transferee of a transfer from the debtor where the agent or principal is acting in his or her representative capacity, even if the agent or principal has physical dominion or control over the funds. See, e.g., Rupp v. Markgraf, ___ F.3d ___, 1996 WL 490684, at *3-*9 (10th Cir. Aug. 27, 1996) (principal not initial transferee where principal caused debtor to make fraudulent transfer); Brunson, 984 F.2d at 141 (law firm not initial transferee where acting as clients' agent); Rafoth, 974 F.2d at 722 (agent not initial transferee); General Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 809 (Bankr. 9th Cir. 1995) (principal of corporate debtor not transferee where principal caused debtor to make fraudulent transfer); Schafer v. Las Vegas Hilton (In re Video Depot, Ltd.), 186 B.R. 126, 133 (Bankr. W.D. Wash. 1995) (principal not initial transferee where principal directed use of funds but never actually received funds); Richardson v. Federal Deposit Ins. Corp. (In re M. Blackburn Mitchell, Inc.), 164 B.R. 117, 125 (Bankr. N.D. Cal. 1994) (principal not initial transferee where principal caused transfer to occur but did not receive funds); Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.), 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983) (law firm not initial transferee where acting as client's agent). These courts have required the principal or agent to have legal dominion and control over the funds transferred in order to constitute the initial transferee of the funds. See, e.g., Rupp, 1996 WL 490684, at *5 ("the dominion and control test from Bonded requires control over the funds and the right to put those funds to one's own purpose" (emphasis added)); Brunson, 984 F.2d at 141 n.4 ("Dominion or control means legal dominion or control."); Rafoth, 974 F.2d at 722 (agent not initial transferee because "in law the money was not his and he was simply acting at the direction of [the principal]").

In Rupp, for example, the Tenth Circuit held that a principal was not the initial transferee under § 550, even though the principal directed a bank to issue a cashier's check, purchased with the corporation's funds, to pay the principal's personal debt. Rupp, 1996 WL 490684, at *3. According to the Rupp court, the dominion and control test requires that the initial transferee have control over the funds and "the right to put those funds to one's own purpose." Id. at *5. The Rupp court stated further that the fact that the principal has the power

8

to direct the funds appropriately or inappropriately is not relevant to the question of whether he or she is an initial transferee under § 550:

> Many principals presumably exercise de facto control over the funds of the corporations they manage. They can choose to cause their corporations to use those funds appropriately or inappropriately. The distinction is only relevant to the question whether the principal's conduct amounted to a breach of duty to the corporation.

Id. at *6.

The Fifth Circuit made the same point in Brunson . In that case, a law firm served as guarantor of a loan extended from Security First National Bank to the debtors in order to assist the debtors in financing litigation. Brunson, 984 F.2d at 139-40. When the debtors received a check in satisfaction of a judgment rendered in their favor, they endorsed the check to the law firm, which then deposited the funds into its trust account. Id. at 140. After retaining its legal fees out of the funds, the law firm returned a portion of the award to the debtors and paid the Security First note in full with the remaining money. Id. Security First marked the note paid and delivered it to the firm, which in turn delivered the note to the debtors. Id.

In holding that Security First was the initial transferee of the funds, the Fifth Circuit applied the dominion and control test and concluded that the law firm did not have the right to put the funds to its own use, but rather was acting as the debtors' agent. Id. at 141. The court noted that dominion or control, as used by the court in Bonded, means legal dominion or control. Id. at 141 n.4. Thus,"the fact that the firm could have violated its fiduciary obligation to the [debtors] by taking the money out of the trust account and spending it as it pleased would make no difference in the analysis." Id.

Having considered carefully the decisions of courts that have required legal dominion and control over the funds to constitute an "initial transferee" and the decisions of courts that have required merely physical dominion and control, we agree with those courts that have held that the dominion and control test as set forth in Bonded requires legal dominion and control over the funds transferred. To

9

hold that a party needs only physical dominion and control over the funds to constitute an "initial transferee" is to hold every agent or principal of a corporation to be the initial transferee when he or she effects a transfer of property in his or her representative capacity. As stated by the court in Bonded and recognized by the Rupp and Brunson courts, the term "transferee" as used in § 550 "must mean something different from `possessor' or `holder' or `agent.'" Bonded, 838 F.2d at 894; see also Rupp, 1996 WL 490684, at *5; Brunson, 984 F.2d at 141. Therefore, we explicitly adopt the dominion and control test as set forth in Bonded. We hold further that this test requires that in order to constitute the "initial transferee" of property under § 550(a) of the Bankruptcy Code, a person or entity must have exercised legal dominion and control over the property.

B.

Applying the Bonded dominion and control test to the facts before us, we hold that AMS was the initial transferee of the $22,500 transferred from the accounts of FHP and SEHP. At the time the transfers were effected, CMC and McMahon were acting in their representative capacity as manager of FHP's and SEHP's accounts. Therefore, neither CMC nor McMahon had the authority to exercise legal dominion and control over the funds. Under the dominion and control test as adopted above, then, they do not constitute the"initial transferee" of the funds under § 550(a) of the Bankruptcy Code.

As support for its position that it was not the initial transferee of the $22,500, AMS relies heavily on Lowry, our decision involving the question of whether an entity constituted the "initial transferee" under § 550(a). Lowry involved a debtor, Columbia Data Products (CDP), that had entered into an agreement with several creditors, including the creditor at issue in the case, Logan Circuits, Inc. (Logan). Lowry, 892 F.2d at 27. Under this agreement, CDP would make payments to a Suppliers' Committee, and the Committee would redistribute the funds to CDP's creditors. Id. After receiving payments from CDP in March and April of 1985, the Committee wrote two checks totaling $73,300 to Logan. Id. Logan deposited these funds in a special depository account at a bank, which, pursuant to an agreement between Logan and one of its creditors, automatically transferred the funds to Logan's creditor, Security Pacific Business Credit, Inc. ("Security

10

Pacific"). Id. Subsequently, CDP filed a voluntary petition for bank-ruptcy under Chapter 11, which it later converted into a Chapter 7 petition. Id. The trustee filed a complaint against Security Pacific, seeking to recover the $73,300 Security Pacific had received from Logan. Id.

On appeal, we affirmed the district court's decision to grant sum-mary judgment in favor of Security Pacific, holding that Security Pacific was not the initial transferee of the transfer from CDP. Id. at 29. We relied on the fact that Security Pacific did not have a business relationship with CDP, either as its creditor or as the guarantor of CDP's payment to Logan. Id. at 28. We noted that although Logan was bound per its agreement with Security Pacific to deposit funds received from CDP into an account for ultimate transfer to Security Pacific, Logan used the funds for its own purpose--to reduce its debt to Security Pacific. Id. at 29. Therefore, the court concluded that because Logan had the direct business relationship with CDP and because Logan used the funds for its own purpose, Logan was the ini-tial transferee of the funds from CDP, not Southern Pacific. Id.

We find Lowry materially distinguishable from this case. It is true, as AMS notes, that CMC and McMahon had the direct business rela-tionship with the debtors in this case, not AMS, and that McMahon used the funds to pay a debt owed by his company, Team III Racing. However, AMS's conclusion from these facts that it is not the initial transferee in this case ignores the agency relationship that existed between CMC/McMahon and the debtors and did not exist in Lowry. When CMC issued the two checks at issue, it was acting as the debt-ors' agent: the checks were issued on behalf of the debtors, and as the debtors' management company, CMC was authorized to issue checks out of the debtors' operating accounts. In Lowry , there was no agency relationship between Logan and Security Pacific. Therefore, when Logan effected the transfer of the funds in that case, he had the legal dominion and control requisite for him to constitute the initial trans-feree of the funds under § 550(a). Because neither CMC nor McMahon had such legal dominion and control in this case, Lowry is distinguishable.

AMS also argues that it is inequitable to hold it responsible for a post-petition transfer when it acted in good faith and purchased the

11

funds for value. However, decisions as to who should bear the loss incurred by a post-petition transfer are made in the Code:

> There is almost always some injustice or hardship which attends transactions occurring after the filing of a petition in bankruptcy . . . because the loss must fall either upon the third person or upon the creditors of the bankrupt. Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say.

Lake v. New York Life Ins. Co., 218 F.2d 394, 399 (4th Cir.), cert. denied, 349 U.S. 917 (1955); see also Rupp , 1996 WL 490684, at *9 (in most bankruptcy cases someone will be injured but Congress has balanced equitable considerations under § 550 by distinguishing between initial transferees and subsequent transferees).

Moreover, in this case, the cashier's check indicated that the remitter was FHP. Therefore, AMS was placed on notice that the funds were drawn from a debtor's accounts. See id. (recipients of cashier's check naming debtor as remitter were on inquiry notice that they were potentially receiving funds to which they were not entitled). This fact distinguishes this case from at least two of the cases in which courts have held that a principal was the initial transferee because in those cases, the remitted checks did not indicate the source of the funds. See Ross, 73 B.R. at 53; Still, 50 B.R. at 85. Because AMS was the first entity to have legal dominion and control of the funds following their transfer, we agree with the bankruptcy and district courts that AMS was the "initial transferee" of the funds under § 550(a) of the Bankruptcy Code.

IV.

Finally, we address AMS's remaining two arguments. First, AMS contends that the judgment of the bankruptcy court, as affirmed by the district court, should be reversed because a genuine issue of material fact exists as to whether the transfers were within the ordinary course of the debtors' businesses. AMS has cited, however, no evidence suggesting that it is common practice in the hotel industry for owners to lease hospitality suites and services at race tracks or other sporting events. In addition, AMS has failed to produce sufficient evidence

12

suggesting that a creditor could reasonably expect FHP or SEHP to enter into such a transaction to create a genuine issue of material fact. Therefore, we agree with the district court that no genuine issue of material fact exists as to whether the transfers were in the ordinary course of the debtors' businesses.

Second, AMS argues that the bankruptcy and district courts failed to consider AMS's affirmative defenses. Having considered each affirmative defense raised before the district court, we hold that the district court properly denied or mooted each of AMS's affirmative defenses.

V.

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED

13