**In re PRESIDENTIAL AIRWAYS, INC., Debtors.**

**Kermit A. Rosenberg, Trustee, Plaintiff,**

**v.**

**Rollins, Burdick, Hunter Co., Defendant.**

**Bankruptcy No. 89–02188(MVB).**

**Adversary No. 92–1175.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Jan. 13, 1999.

**MEMORANDUM OPINION**

MARTIN V.B. BOSTETTER, JR., Chief Judge.

In the instant case, we consider whether there was an avoidable preferential transfer pursuant to 11 U.S.C. § 547 in this adversary proceeding commenced on April 2, 1992. The trustee seeks to collect payments that were made to Rollins, Burdick, Hunter Co., now known as Rollins, Hudig Hall, ("RHH" or "the defendant") by the debtor within 90 days prior to the filing of the bankruptcy case. The case was filed on October 26, 1989.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 (1994). Moreover, this court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2).

On April 2, 1992, the trustee commenced this adversary proceeding against RHH by filing a Complaint to Recover Preferential Transfers in which he seeks to recover approximately $242,871.00 in alleged preferential transfers made by the debtor to RHH. RHH filed its answer on May 11, 1992 raising defenses under 11 U.S.C. §§ 547(c) and 550 and asserting that the trustee cannot establish all of the elements under 11 U.S.C. § 547(b).

The defendant is an aviation insurance broker whose clients are airlines. Its purpose is to set up a cash flow plan between their clients, including the debtor in this case and insurance companies. The defendant is then required to ensure the client has sufficient funds in its fiduciary account in time to make the client's insurance payments when they become due at the client's direction. Every airline the size of the debtor utilizes an insurance broker to procure insurance. The evidence established that insurance coverage is absolutely necessary in order for the airline to operate. The cash flow plan provides for payment of both the insurance premiums and a commission to the defendant for services to be rendered.

It is undisputed that RHH and Presidential entered into an agreement whereby RHH would obtain aviation insurance for Presidential and that RHH did in fact obtain the insurance coverage. Presidential agreed to make an initial down payment of $189,864 and then make ten monthly installment payments of $40,000 for the insurance policy that went from November 1988 to November 1989 and had a total premium amount of $1,292,750.00.

The evidence also revealed that the debtor made the monthly payments according to the cash flow plan. However, prior to the filing of this case, the debtor's payments became sporadic and not in accordance with the plan. Eventually, the debtor began making some weekly payments to try to stay up to date with what was owed for the monthly premium payments. A representative for RHH testified that it was unusual for airlines to deviate from the cash flow plan and that to his knowledge only three airlines other than the debtor had deviated from the cash flow payment plans. All of the airlines had filed for bankruptcy protection and none of them are currently in existence.

It is undisputed that during the ninety days preceding the filing of the bankruptcy petition, the debtor made the following payments to RHH: August 11, 1989 for $17,000.00, August 25, 1989 for $50,000.00, August 28, 1989 for $10,000.00, August 31, 1989 for $45,000.00, September 1, 1989 for $45,871.00 and September 29, 1989 for $75,000.00, totaling $242,871.00.

The trustee asserted that these payments were preferential transfers that are avoidable and that the funds are property of the estate under section 547(b). Various items of correspondence between RHH and the debtor were relied on by the trustee wherein RHH demanded payment stating that the debtor had invoices outstanding or that it was delinquent on its account.

RHH claimed that it established a cash flow plan with Presidential that required payments into a fiduciary account before any debts were due. Therefore, no creditor existed nor were the payments made on account of an antecedent debt and accordingly, the payments cannot be classified as preferential transfers. Furthermore, the testimony of the RHH representative indicated that in fact there was nothing past due and that the correspondence was simply a reminder that the debtor did not meet the cash flow plan.

The Bankruptcy Code authorizes a bankruptcy trustee to set aside and avoid certain transfers made by a debtor prior to filing its petition in bankruptcy. In order to establish that a preferential transfer has been made pursuant to 11 U.S.C. § 547, the trustee must prove by a preponderance of the evidence that a transfer was made within 90 days before the date of the filing of the petition,[1] to or for the benefit of a creditor, for or on account of an antecedent debt while the debtor was insolvent and that the creditor received more than it would have in a chapter 7 case. 11 U.S.C. § 547(b).

In the instant case two types of payments exist, one for the insurance coverage and the other to RHH for its services. The debtor made payments as set out above, which RHH placed into a fiduciary account. Pursuant to the agreement, RHH used a portion of the funds as payments for the services it rendered to the debtor and the remaining funds were to be paid to the insurance companies according to the cash flow plan. We address each type of payment separately to ascertain whether either or both types of payments were preferential transfers that may be avoided by the trustee.

Section 547(b)(2) provides that the trustee may avoid a transfer by the debtor of an interest in property if the transfer is made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Code does not define antecedent debt but a debt is generally presumed to be antecedent if it is incurred before the transfer. *Clark v. Frank B. Hall & Company of Colorado (In re Sharoff Food Service, Inc.)*, 179 B.R. 669,

---

1. The Code provides for a presumption of insolvency during the 90 days immediately preceding the filing of the petition. 11 U.S.C. § 547(f).

676 (Bankr.D.Colo.1995) (finding payment to insurance broker for insurance premiums *already past due* to be antecedent debt for section 547); 5 COLLIER ON BANKRUPTCY ¶ 547.03[4], 547–33 (15 ed. rev.1997) (citing *Ledford v. Fort Hamilton Hughes Mem'l Hosp. (In re Mobley)*, 15 B.R. 573 (Bankr. S.D.Ohio 1981)).

The trustee attempts to persuade us that an antecedent debt for ongoing services is incurred on the date that the contract calls for payment and that in the instant case would be when the payments were "due" to RHH under the payment plan. *See Begier v. Krain Outdoor Advertising, Inc. (In re American Int'l Airways, Inc.)*, 68 B.R. 326, 331 (Bankr.E.D.Pa.1986), *aff'd* 1987 WL 54484 (E.D.Pa. May 12, 1987).

■ However, the Fourth Circuit has developed a common sense approach to determine whether a debt is an antecedent debt. *Smith v. Creative Fin. Management Inc. (In re Virginia–Carolina Fin. Corp.)*, 954 F.2d 193, 197 (4th Cir.1992). Courts look to whether the creditor would be able to assert a claim against the estate if the payment had not been made. *Id.* A "claim" under the Bankruptcy Code is a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(12). In the case at bar, if the debtor had not made the payments in dispute, RHH would have no claim against the debtor because RHH had not rendered services to the debtor at the time the payments were made. Furthermore, RHH would not have a claim against the debtor if the debtor failed to make the insurance payments.

The purpose of section 547 is to treat all creditors equally during the preference period. Although the correspondence from RHH to the debtor indicated that payments were "due" an antecedent debt had not been incurred. The uncontroverted testimony was that the correspondence was intended to advise the debtor that it was failing to comply with the cash flow program, not that the insurance premiums were past due or that any money was actually owed to RHH. No evidence was presented to demonstrate that the debtor's insurance premiums were either paid by RHH to be reimbursed later, or that the payments to the insurance companies were late. RHH and the debtor were aware that if the premiums were not paid then the insurance would lapse and there would be no insurance coverage. Without insurance, the debtor would not be able to operate. The trustee adduced no evidence that there was an actual debt owing at any time, including when the correspondence was sent to the debtor.

Furthermore, there is uncontroverted testimony that the agreement between RHH and the debtor was for the debtor to make payments for services to be rendered at the beginning of each month. The debtor made payments at the end of August for services to be provided in September, and a payment at the end of September for services to be provided throughout October.

Taking into account the facts and the relevant case law including the Fourth Circuit analysis, we cannot find that there was an antecedent debt for either the payments made for insurance or for services rendered by RHH. Accordingly, the trustee has failed to establish all elements of 11 U.S.C. § 547 and therefore, the complaint must be denied, the payments may not be avoided by the trustee.

■ Certain exceptions to the trustee's avoidance powers are set forth at 11 U.S.C. § 547(c). Although we conclude that the payments may not be avoided, we will also analyze whether any exceptions would apply. First, whether the payment of the fees were contemporaneous exchanges for new value and therefore within one of the exceptions listed;[2] or second, whether RHH was mere-

---

2. RHH also argued that the payments were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). Factors that evidence payments in the ordinary course include timing, amount and manner of the transaction. *Reading China and Glass Co., Inc. v. Loomis Co.*, 1992 WL 55707, at *2 (E.D.Pa. March 1992). If payment terms are varied from the contract terms and are not consistent with past practices, then, the payments are not in the ordinary course of business. *Id.; see Huffman v. New Jersey Steel Corp. (In re Valley Steel, Corp.)*, 182 B.R. 728, 736 (Bankr.W.D.Va.1995). In the case at bar, prior to the preference period, the debtor

ly a conduit and not an initial transferee as set forth in 11 U.S.C. § 550 so as to prevent the trustee from avoiding the payments for insurance coverage. We begin with the exception for a contemporaneous exchange of new value. The payments for services were made before services were rendered. In this instance, payments were made on August 25, 1989 and September 11, 1989 for services to be rendered in September and October respectively. RHH provided services to the debtor until November 1, 1989.

In order to prove a contemporaneous exchange for new value pursuant to section 547(c)(1), the defendant must establish that the otherwise preferential transfers to it were:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

New value is defined in section 547(a) as "money or money's worth in goods, services, or new credit or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including an obligation substituted for an existing obligation". 11 U.S.C. § 547(a)(2).

██ Section 547(c)(1) protects transfers to the extent that the creditor can show that the value given to the creditor is the same value the debtor received. 5 COLLIER ON BANKRUPTCY ¶ 547.04[1], at 547–43 (15th ed. rev.1997). The Seventh Circuit in *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 969 F.2d 321 (7th Cir.1992) stated "contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances ... surrounding an allegedly preferential transfer". *Id.* at 328. In determining whether there has been a contemporaneous exchange for new value, the

critical factor is whether the parties intended a contemporaneous exchange. *Official Plan Committee v. Expeditors Int'l of Washington, Inc. (In re Gateway Pac. Corp.)*, 153 F.3d 915, 918 (8th Cir.1998) (citations omitted).

*Sharoff Food* noted that payments to bring an account current to obtain the right to continue doing business is not a contemporaneous exchange for new value. *Sharoff Food*, 179 B.R. at 676. There the payments were made to an insurance broker who had already paid the premiums in order to continue the insurance coverage. Additionally, down payments made after the insurance policies became effective were deemed preferences but not excepted based on the contemporaneous exchange for new value defense. *Id.*

██ Here, the payments for fees were intended by the debtor to constitute a contemporaneous exchange for new value. RHH was providing services for the debtor after the payments were made. 11 U.S.C. § 547(a)(2) (includes services as new value). The exchanges were substantially contemporaneous in that when the debtor made the payments, RHH continued to provide its services for the months of September and October. These payments also benefitted the bankruptcy estate by permitting the debtor to continue business. *See Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 327 (8th Cir.1997) (finding that continuation of employee services benefitted the debtor and was a contemporaneous exchange of new value so that transfer of monies from debtor to pension benefit fund was not avoidable). Accordingly, we conclude that the payments by the debtor for services rendered by RHH would also be excepted as a contemporaneous exchange of new value if we were to find the transfers to be preferential and avoidable.

██ Additionally, we find RHH is not an initial transferee as required by 11 U.S.C.

made only one monthly payment. Thereafter, in July, August and September 1989, the debtor made multiple payments which, although they did not violate any contractual terms, they were

not consistent with past practices. Accordingly, we agree with the trustee and find that these payments were not in the ordinary course of business.

§ 550 with respect to the payments made by the debtor for insurance coverage. Section 550 provides that if a court were to determine that a transfer was avoidable, the property is recoverable from the initial transferee or an immediate or mediate transferee of the initial transferee. An initial transferee however, is not always the initial recipient. *Lowry v. Security Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 28 (4th Cir.1989). Courts have held that there is a distinction between transferees and conduits, for example, entities merely holding money for the debtor. A test has been established in order to determine whether the party is an initial transferee, which looks to whether the party had sufficient dominion or control over the property transferred "to put the money to one's own purposes." *Bowers v. Atlanta Motor Speedway Inc. (In re Southeast Hotel Properties Ltd. Partnership)*, 99 F.3d 151, 154–55 (4th Cir.1996) (citing *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890 (7th Cir.1988)). If the entity does not utilize the money for its own purposes, it is simply a conduit.

■■■ *Bowers* was the initial case wherein the Fourth Circuit adopted the test set forth in *Bonded.* Several courts in other jurisdictions addressing the issue of whether an entity was an initial transferee have used the test, although there was some controversy as to exactly what constituted "dominion and control". *Rupp v. Markgraf*, 95 F.3d 936, 939 (10th Cir.1996); *Malloy v. Citizens Bank of Sapulpa (In re First Security Mortgage Co.)*, 33 F.3d 42, 44 (10th Cir.1994); *Nordberg v. Arab Banking Corp (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598 (11th Cir. 1990); *Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Investments, Inc.)*, 155 B.R. 332, 338 (Bankr.S.D.N.Y.1993); *see Christy v. Alexander & Alexander of New York Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir.1997); *Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1199–1200 (9th Cir.1997). In adopting the *Bonded* test, *Bowers* concluded that "dominion and control" requires the initial transferee to have legal dominion and control over the funds transferred. *Bowers*, 99 F.3d at 156. The court further stated "to

hold that a party needs only physical dominion and control over the funds to constitute an 'initial transferee' is to hold every agent or principal of a corporation to be the initial transferee when he or she effects a transfer of property in his or her representative capacity." *Id.*

This "legal dominion and control" application is consistent with *Security First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir.1993). There the court found that because the law firm who received funds from the debtor and deposited them into the firm's trust account, instead of its business account indicated that the firm was merely a fiduciary of the debtor and the bank was in fact the initial transferee. *Id.*

In a case substantially similar to the case at bar, the debtor, Excello commenced an adversary proceeding against Associated, an insurance broker for the debtor to recover alleged preferential transfers. *Excello Press, Inc. v. Bowers, Inc. (In re Excello)*, 104 B.R. 924 (Bankr.N.D.Ill.1989), *aff'd in part rev'd in part on other grounds*, 120 B.R. 938 (N.D.Ill.1990), *rev'd on other grounds*, 967 F.2d 1109 (1992). The debtor made monthly payments to Associated who would then deposit the payments into an escrow account and pay the insurance premium portions to the insurance carrier. *Id.* The court concluded that Associated was not an initial transferee as set forth in section 550(a) but was instead, an agent of the insurer for whose benefit the payment was made. Relying on the test set forth in *Bonded,* the court found that Associated did not have dominion over or the right to put the money to its own use. Accordingly, the court determined that Associated was not a transferee liable under section 550(a). *Id.*

■■■ Following *Excello* and using the *Bonded* test, we conclude that RHH is merely a commercial conduit and not an initial transferee from which a preferential transfer may be recovered. In that as the insurance broker for the debtor, it received funds from the debtor to be paid to the insurance companies. The nature and status of the small airline industry only allows insurance companies to deal with aviation insurance brokers.

Aside from the funds received for services to be rendered, RHH received virtually no benefit from the funds. It held the funds in a fiduciary account and pursuant to the debtor's instructions remitted payment to the various insurers to keep the insurance current. As such, we conclude RHH is not an initial transferee from which the funds may be recovered under section 550(a) and would not be liable for the return of the funds.

The trustee has failed to prove by a preponderance of the evidence the necessary elements of section 547(b). Furthermore, we find the transfers would nevertheless fall within the exception of section 547(c)(1) and, RHH is not an initial transferee from which a preferential transfer may be recovered. An order will be entered consistent with this opinion denying the plaintiff's request for a judgment on the complaint.