**In re TIDEWATER DESIGNS, INC., Debtor.**

**Tidewater Designs, Inc., Plaintiff,**

**v.**

**Evergreen America Corp., Defendant.**

**Bankruptcy No. 99–06176–8–JRL.**
**Adversary No. L–01–00062–8–AP.**

United States Bankruptcy Court, E.D. North Carolina, Wilson Division.

April 16, 2002.

David J. Haidt, New Bern, NC, for plaintiff.

John Richard Newton, Wilmington, NC, for defendant.

## AMENDED ORDER

J. RICH LEONARD, Chief Judge.

This adversary proceeding is before the court on the defendant's motion for summary judgment. A hearing was held on March 27, 2002 in Wilson, North Carolina. For the reasons stated below, the defendant's motion is granted.[1]

### I. Standard of Review

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment should not be granted unless the moving party establishes his right to judgment "with such clarity as to leave no room for controversy ...." *Portis v. Folk Construction Co.*, 694 F.2d 520, 522 (8th Cir.1982).

### II. Undisputed Facts

The plaintiff filed a petition for relief under chapter 11 of the Bankruptcy Code in the Eastern District of North Carolina on October 15, 1999. Before filing, the plaintiff operated as a wholesale distributor of small gift and decorative items and accessories that it imported from vendors in China, Taiwan, and Hong Kong. The defendant, Evergreen America Corporation ("Evergreen"), is a New Jersey corporation doing business in North Carolina as the exclusive general agent for Evergreen Marine Corp. (Taiwan) Ltd. ("EMC"), a Taiwanese ocean carrier. EMC transports cargoes in international trade and is compensated by the payment of ocean freight charges.

On May 8, 2001, the plaintiff filed this adversary proceeding to recover alleged preferential payments totaling $123,329.50 that were received by Evergreen during the 90 days preceding the plaintiff's bankruptcy filing. It is undisputed that these payments were made to Evergreen for payment of collect ocean freight charges due to its principal EMC for shipments carried from the Far East to the United States. It is also undisputed that the plaintiff did not have a contract with Evergreen, and that EMC, not Evergreen, provided all transportation services for the cargoes that were shipped.

■ The challenged payments were made between two and fifteen days before the corresponding cargo was released to the plaintiff. This delay is consistent with industry practice. Under admiralty law, a possessory maritime lien for freight charges arises in favor of an ocean carrier when cargo is delivered into the control of the ocean carrier at the load port. To

---

1. This order corrects a nonsubstantive error in the April 16, 2002 order granting the de- fendant's motion for summary judgment.

prevent the premature termination of this lien, ocean carriers typically release possession of ocean cargo only after presentation of a bill of lading and the payment of all collect freight charges on that cargo.

The relationship between Evergreen and EMC is controlled by an Agency Agreement dated January 1, 1992. Under this agreement, Evergreen has the duty of collecting freight payments for EMC and bears a degree of risk if freight payments are not collected. The agent's risk of loss is allocated by paragraph 7 of the agreement:

(a) The Agents shall be responsible for and pay in U.S. Dollars to EMC, all Freights ... in respect of each voyage. Regardless of whether the Agents have collected all Freights from customer, shipper, consignee, or other responsible party ..., the payment of the Freights shall be made within four (4) weeks after the Vessel's sailing for export cargo and within two (2) weeks after the Vessel's arrival for import cargo.

(b) In the event that the Agents fail to pay to EMC the said Freights within the specified time, the Agents shall pay to EMC in addition to the principal sum owing ... an interest at the rate of fifteen percent (15%) per annum on the unpaid balance from the due date of payment until actual payment.

(Agency Agreement submitted as Exhibit F to Defendant's Declaration in Support of its Motion for Summary Judgment.) Evergreen's risk is mitigated by paragraph 6 of the agreement, which relieves the agent from liability if it is unable to collect freight charges because the bill of lading is not released or because the cargo containers remain undelivered.

Evergreen has submitted a statement from its representative Jason Wu, who asserts that Evergreen regards the collection of freight charges from customers and the payment of those charges to EMC as separate matters. Mr. Wu indicates that the plaintiff paid its freight charges with checks made payable to Evergreen,[2] and that Evergreen initially deposited the collected funds into an ocean freight account maintained in its own name. Cargoes were released to the plaintiff only after the payments were credited in Evergreen's freight receivable system. After the collection of freight charges and release of cargo, the funds were finally transferred from Evergreen's account to an account maintained in New York by EMC.

### III. *Discussion*

Section 547 of the Bankruptcy Code defines which transfers are avoidable as preferences, and § 550 identifies the group of transferees from whom such transfers may be recovered. Under § 550, avoidable transfers may be recovered from the initial transferee, or from any immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a). Because these terms are not defined in the Code, courts have frequently struggled to determine whether the initial recipient of funds is also the initial transferee for purposes of § 550.

Many decisions have concluded that "a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee' ...." 5 LAWRENCE P. KING, ED., COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (15th ed. rev.2001),

---

**2.** Mr. Wu does not directly state that the checks were made payable to Evergreen, although this may be implied from his statement that the checks were initially deposited into an Evergreen account. Because this is the defendant's motion, the court will consider this factual dispute in the light most favorable to the non-moving party and presume that the checks were, in fact, made payable to Evergreen.

*and see* cases cited at ns. 35—39. The Fourth Circuit Court of Appeals has long recognized this rule, holding that "a party cannot be an initial transferee if he is a mere conduit for the party who had a direct business relationship with the debtor." *Lowry v. Security Pacific Business Credit, Inc. (In re Columbia Data Prods., Inc.),* 892 F.2d 26, 28 (4th Cir.1989), *citing In re Fabric Buys of Jericho, Inc.,* 33 B.R. 334 (Bankr.S.D.N.Y.1983).

Several years after *Lowry,* the Fourth Circuit addressed the specific circumstances in which an agent will be found to have acted as a conduit when receiving a transfer from a debtor whose business relationship is with the agent's principal. In *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. Partnership),* 99 F.3d 151 (4th Cir.1996), the court surveyed the available case law, concluding that the majority of reported decisions have held that an agent is not the initial transferee if the agent is "acting in his or her representative capacity, even if the agent ... has physical dominion or control over the funds." *Id.* at 155.

*Bowers* then follows the Fifth, Seventh, Ninth, and Tenth Circuits in holding that an agent is not an initial transferee for purposes of § 550 unless the agent possesses both physical *and legal* dominion and control over the funds. *See Security First Nat'l Bank v. Brunson (In re Coutee),* 984 F.2d 138 (5th Cir.1993); *Bonded Fin. Serv. Inc. v. European Am. Bank,* 838 F.2d 890 (7th Cir.1988); *Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544 (9th Cir.1991); *Rupp v. Markgraf,* 95 F.3d 936 (10th Cir. 1996). Under these decisions, mere physical control over the funds does not make the agent an initial transferee. Indeed, without more, physical control of the funds simply opens the door for the agent to breach the fiduciary duty owed to the principal by taking the money for its own purposes. To become the initial transferee, the agent must also have "the right to put those funds to one's own purpose," or legal control over the funds. 99 F.3d at 155, *quoting Rupp,* 95 F.3d at 941.

■ Applying these rules to the present case, it is clear that the defendant is not the initial transferee of the challenged transfers. The debtor's contractual relationship was with Evergreen's principal EMC, and the debtor's dealings with Evergreen were limited to the release of cargo in exchange for payment and presentation of a bill of lading. On these facts, there is no doubt that Evergreen was acting as an agent for EMC when it accepted payments from the debtor. The relationship between Evergreen and EMC is established by a formal agency agreement which, although it allocates a degree of risk to Evergreen, also charges Evergreen with the express duty of collecting freight charges for its principal. Moreover, Evergreen is relieved of liability to EMC so long as it ensures that payment is received before the corresponding cargo is released. This release from liability is consistent with the fact that, as EMC's agent, Evergreen has a fiduciary obligation to transmit the debtor's payments to EMC. It also reinforces the fact that Evergreen has no right to use these funds for its own purposes, and therefore did not have legal control over the challenged payments.

■ Although the defendant was the initial recipient of payments from the debtor, the court concludes that the defendant's principal EMC was the initial transferee of these payments for purposes of § 550. It follows that the defendant is not a party from whom the challenged transfers may be recovered, and there is no need to address whether these transfers are, in fact, preferences or whether the

defendant is entitled to the benefit of any defense under § 547(c).

### IV. *Conclusion*

Based on the foregoing, the defendant's motion for summary judgment is granted and this case is dismissed.

**So Ordered.**