**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN G. CALHOUN; GLENDA R.
CALHOUN,
              *Plaintiffs-Appellants,*

v.

UNITED STATES TRUSTEE,
              *Trustee-Appellee.*

No. 09-1646

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Cameron McGowan Currie, District Judge.
(3:09-cv-00822-CMC)

Argued: January 25, 2011

Decided: May 3, 2011

Before MOTZ and WYNN, Circuit Judges,
and Irene C. BERGER, United States District Judge
for the Southern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Berger wrote the opinion, in which Judge Motz and Judge Wynn joined.

**COUNSEL**

**ARGUED:** Joseph Edward Mitchell, III, JOSEPH E. MITCHELL, III, PC, Augusta, Georgia, for Appellants. Catherine Bentley Sevcenko, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Ramona D. Elliott, General Counsel, P. Matthew Sutko, Associate General Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

BERGER, District Judge:

John and Glenda Calhoun appeal the judgment of the district court, which affirmed the bankruptcy court's decision to dismiss their petition for Chapter 7 bankruptcy on grounds of abuse. We affirm.

I.

When reviewing a decision by a district court in its capacity as a bankruptcy appellate court, "our review of [its] decision is plenary." *Bowers v. Atlanta Motor Speedway, Inc. (In re Se. Hotel Props. Ltd.)*, 99 F.3d 151, 154 (4th Cir. 1996). Accordingly, here, we assess the factual findings of the bankruptcy court for clear error and review its legal conclusions de novo. *See Educ. Credit Mgt. Corp.* (*In re Kirkland*), 600 F.3d 310, 314 (4th Cir. 2010).

II.

John and Glenda Calhoun filed a voluntary Chapter 7 bankruptcy petition on February 27, 2008, seeking to discharge $106,707 in unsecured debt. Mr. Calhoun retired from his job as the Chief Financial Officer of a hospital in 1997, and

receives $7,313 monthly from two retirement plans, in addition to $1,459 in Social Security benefits, for a total of $8,772 in monthly income. Mrs. Calhoun does not receive any independent income. The Calhouns live on a 3.5 acre property on Tennis Ranch Road in Jackson, South Carolina, with no dependents. In 2000, they attempted to sell their home but were unsuccessful after two years and decided to spend over $130,000 renovating the home with the intention of staying.

Mr. Calhoun had a separate retirement account in connection with his employment that he converted to an IRA. The Calhouns planned to use those investments, which Mr. Calhoun was managing, to supplement Mr. Calhoun's income, but those funds were significantly and unexpectedly reduced during the economic downturn. After accumulating debt on a second mortgage and five credit cards, the Calhouns entered into a payment plan with a credit management company whereby they reduced their monthly expenses and paid their creditors a total of $2,638 per month. They continued this payment plan for twenty-two (22) months, but became discouraged due to the fact that the payment plan did not leave any money left over in their budget for emergencies. Mr. Calhoun began exploring options for bankruptcy.

## III.

Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and amended Section 707(b) of the Bankruptcy Code with the intent of relaxing the standard for dismissing a petition brought under Chapter 7 and characterized as abusive. H.R. Rep. No. 109-31(I), at 7-8 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 98-99. Specifically, the standard for dismissal under section 707(b) was changed from "substantial abuse" to simply "abuse." 11 U.S.C. § 707(b)(1). The amendment also eliminated a presumption in favor of granting a debtor's discharge. As amended by the BAPCPA, § 707(b) permits the court's dismissal of "a case filed by an individual debtor under this

chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1).

An essential element to the BAPCPA is the "means test," a formula that screens a debtor's income and expenses to determine whether the debtor is able to repay his debt. 11 U.S.C. § 707(b)(1), (2); *see also Morse v. Rudler (In re Rudler)*, 576 F.3d 37, 40 (1st Cir. 2009); *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148, 1151 (7th Cir. 2008) ("The purpose of the means test is to distinguish between debtors who can repay a portion of their debts and debtors who cannot."). When the debtor's income exceeds the "highest median family income of the applicable State for a family of the same number or fewer individuals," the means test is applied to create a rebuttable presumption of abuse. 11 U.S.C. § 707(b)(2), (6), (7).

The means test takes into account the debtor's monthly income and certain deductible expenses such as the cost of housing, utilities, taxes, health insurance and an allowance for food and clothing. 11 U.S.C. § 707(b)(2)(A). Some of these expenses may be calculated by using national or local standards. 11 U.S.C. § 707(b)(2)(A). The debtor's monthly disposable income is determined by subtracting these allowable expenses from his monthly income, and if that number is greater than a statutory benchmark then the presumption of abuse arises.[1]

In cases where the presumption does not arise or is rebutted, the court still must determine whether granting a debtor

---

[1]The debtor may rebut this presumption of abuse due to an excess of expenses "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

relief would be an abuse of the provisions of Chapter 7 by considering "whether the debtor filed his petition in bad faith" and/or by considering "the totality of the circumstances . . . of the debtor's financial situation." 11 U.S.C. § 707(b)(3).[2]

## IV.

The Calhouns' fixed income, excluding Mr. Calhoun's Social Security benefits, is $7,313 per month or $87,756 per year—well above the $46,521 median income for a household of two in South Carolina. Including the Social Security benefits, their average monthly income is $8,772. The means test splits the Calhouns' monthly expenses into three categories: (A) expenses allowed under IRS standards, (B) additional expense deductions under § 707(b), and (C) deductions for debt payment.

The Calhouns list $3,917.83 in monthly expenses allowed under IRS standards, including $925 for food, clothing, household supplies, personal care, and miscellaneous; $426 for housing and utilities, non-mortgage expenses; $1,318 for transportation and expenses for their two vehicles; $556.83

---

[2]In *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991), this Court adopted a "totality of the circumstances" approach to identifying "substantial abuse" in Chapter 7 cases, utilizing the following five factors:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Green*, 934 F.2d at 572.

for taxes; $439 for two life insurance policies; $76 for health care and $69 for telecommunication services. In additional expense deductions under § 707(b), they claim $286 for health insurance and $884 for charitable contributions. Their total deductions for debt payment include a $2,151 mortgage payment and $91.36 for payments on priority claims. The total of all of the Calhouns' monthly deductions allowed under the means test is $7,330.19. The Calhouns' expenses, when subtracted from their income, left a monthly net income that was insufficient to trigger a presumption of abuse under § 707(b)(2).

However, the bankruptcy court proceeded under § 707(b)(3) and concluded that the totality of the Calhouns' financial situation evidenced an abuse of Chapter 7. In so concluding, the court found the factors set forth in *Green* to be instructive, while recognizing that "the underpinnings of *Green* have been removed" with the amendment of § 707(b). The court concluded that there was no illness, calamity, disability or unemployment that precipitated the Calhouns' filing for bankruptcy, and that they had the ability to repay their debt.

The Calhouns object to the court's dismissal based on their ability to pay, and assert that *Green* prohibits a dismissal on that ground alone. They further assert that Mr. Calhoun's Social Security benefits should be excluded from the analysis of their ability to pay. Finally, the Calhouns posit that the means test is conclusive of eligibility for Chapter 7 relief.

We can readily dispense with the last argument. The means test provides a formula by which a court can presume abuse on the part of above-income debtors and dismiss their case on that basis. The means test is not conclusive, the presumption is rebuttable, and a court may still find abuse even if there is no presumption. *See In re Crink*, 402 B.R. 159, 168 (Bkrtcy. M.D.N.C. 2009). Indeed, §707(b)(3) describes precisely that

situation and provides considerations for determining abuse when the presumption does not arise or is rebutted.

With respect to the Calhouns' other objections, we need not make a determination as to the enduring applicability of the holding in *Green* or the inclusion of Social Security benefits in an analysis of the totality of financial circumstances. The bankruptcy court found a multitude of factors weighing in favor of abuse, and we discern no error in those findings.

The bankruptcy court ultimately found that the Calhouns were able to pay their creditors based on the totality of the circumstances of their financial situation, including the following evidence:

—- The Calhouns made payments in the amount of $2,638 a month to their unsecured creditors for twenty-two (22) months before filing for Chapter 7 relief;

—- Testimony demonstrated that the Calhouns did not file for bankruptcy as a result of sudden illness, calamity, disability, or unemployment;

—- The Calhouns' monthly expenses "border on the extravagant" and their budget leaves "ample room for reduction";

—- The Calhouns paid $439 per month on two life insurance policies, including one that would provide for Mrs. Calhoun after Mr. Calhoun's death, even though Mrs. Calhoun will receive 75% of Mr. Calhoun's monthly income from his retirement account;

—- The Calhouns claim to spend $930 per month on food and have expenses for cable and internet, laundry and dry cleaning; and

—-    The Calhouns did not justify their excessive transportation expenses.

This evidence amply supports the bankruptcy court's finding that granting the Calhouns' Chapter 7 relief would be an abuse of the provisions of that chapter. This conclusion holds firm even without considering Mr. Calhoun's Social Security benefits. A finding of abuse based on the above-stated evidence of the Calhouns' excessive budget and unjustifiable expenses does not depend on the additional $1,459 in Social Security benefits they receive each month.

*AFFIRMED*